**F I L E D**
CLERK, U.S. DISTRICT COURT

1/22/2025

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ASI_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ADAM IZA,<br>　　aka "The Godfather,"<br>　　aka "Ahmed Faiq,"<br>　　aka "Diego,"<br>　　aka "Diego Facebook,"<br>　　aka "Tony Brambilla,"<br>　　aka "Leo,"<br><br>　　　　Defendant. | No. 2:24-CR-00630(A)-PA<br><br>A M E N D E D<br>F I R S T<br>S U P E R S E D I N G<br>I N F O R M A T I O N<br><br>[18 U.S.C. § 241: Conspiracy Against Rights; 18 U.S.C. § 1343: Wire Fraud; 26 U.S.C. § 7201: Evasion of Tax Assessment; 18 U.S.C. §§ 924(d)(1) and 982, 26 U.S.C. § 7301, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Information:

1. Defendant ADAM IZA, also known as ("aka") "The Godfather," aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka "Leo" ("IZA"), was a citizen of the United States and

resided in Los Angeles County and Orange County, California, within the Central District of California.

2.    Co-Conspirator 1 was a citizen of the United States and resided in Los Angeles County and Orange County, California.

3.    The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County, California, through its thousands of sworn deputies.

4.    LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, LASD Deputy 4, LASD Deputy 5, and LASD Deputy 6 were sworn law enforcement officers employed by the LASD.  As LASD deputies, LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, LASD Deputy 5, and LASD Deputy 6 were subject to an oath of duty and rules of conduct.  This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes.

5.    By virtue of their positions, LASD Deputy 1, LASD Deputy 2, LASD Deputy 3, LASD Deputy 4, LASD Deputy 5, and LASD Deputy 6 had access to sensitive law enforcement databases and other confidential databases from which they could obtain personally identifiable information ("PII") regarding individuals, including addresses, registered vehicles, and criminal backgrounds.

6.    LASD Deputy 1 was also a federal Task Force Officer ("TFO") assigned to a task force involving a federal law enforcement agency.

7.    Defendant IZA and Victim E.Z. were engaged in a dispute involving a laptop computer believed to contain over $100 million in

cryptocurrency accessible through multiple passcodes and private keys.

8.    Zort, Inc. ("Zort") was a company that had developed an artificial intelligence-based cryptocurrency trading platform. Defendant IZA incorporated Zort on or about January 30, 2020, in the State of Delaware.  Zort was registered with the Internal Revenue Service ("IRS") as a C corporation.

9.    Dream Agency ("Dream") was a purported social media company that Co-Conspirator 1 incorporated on or about February 8, 2021, in the State of California.  Co-Conspirator 1 was the sole director and officer of Dream.  Dream was registered with the IRS as an S corporation, using Co-Conspirator 1's Social Security number.

10.  Rise Agency, Inc. ("Rise") was a purported e-commerce company that Co-Conspirator 1 incorporated on or about April 8, 2022, in the State of California.  Initially, Co-Conspirator 1 was the sole director and officer of Rise.  Defendant IZA replaced Co-Conspirator 1 as the Chief Executive Officer ("CEO") and director of Rise on or about November 3, 2022.  Rise was registered with the IRS as an S corporation, using Co-Conspirator 1's Social Security number.

11.  Defendant IZA and Co-Conspirator 1 opened and had signatory authority over Zort corporate bank accounts, including accounts at Bank of America ("BOA") and JPMorgan Chase Bank ("Chase").  Defendant IZA and Co-Conspirator 1 were the only signatories on the Zort bank accounts.

12.  Co-Conspirator 1 opened and had signatory authority over Dream corporate bank accounts, including accounts at BOA and Chase. Co-Conspirator 1 was the sole signatory on the Dream bank accounts.

13. Co-Conspirator 1 opened and had signatory authority over a Rise corporate bank account with Chase. Initially, Co-Conspirator 1 was the sole signatory on the Rise bank account. On or about May 4, 2022, defendant IZA was added as a signatory to the Rise bank account.

14. Meta Platforms, Inc., formerly named Facebook, Inc. (collectively, "Meta"), was a multinational technology company that owned and operated the Facebook platform, a social media and social networking service. Meta provided major advertising clients with business manager accounts that had access to premium advertising slots on the Facebook platform. These business manager accounts were provided with a line of credit that allowed for the posting of advertisements in advance of payment. After a line of credit was partially depleted, Meta issued a monthly invoice that required its client to replenish the account. Upon receipt of payment, the credit line was restored to its initial spending limit.

15. Defendant IZA used fictitious names, including "Diego Facebook," "Tony Brambilla," and "Leo," to communicate with customers purchasing access to the business manager accounts and lines of credit. Defendant IZA, communicating through his aliases, instructed customers to send payments to the Zort, Dream, and Rise bank accounts. Defendant IZA, communicating through his aliases, told customers that Zort was his over-the-counter broker through which he would receive payment, thereby concealing his direct control over Zort and its bank accounts.

16. The IRS was an agency of the United States Department of Treasury responsible for administering the tax laws of the United States and collecting taxes owed to the United States.

17.  IRS Form 1040, U.S. Individual Income Tax Return ("Form 1040"), was a form generally used by individual U.S. taxpayers to file annual income tax returns.

18.  IRS Form 1120, U.S. Corporation Income Tax Return ("Form 1120"), was a form generally used to report the income, gains, losses, deductions, and credits of a C corporation.

19.  Defendant IZA derived substantial gross income from the sale of Meta advertising; used the Zort, Dream, and Rise bank accounts to receive such income; funneled the proceeds to his and Co-Conspirator 1's personal bank accounts; and used the proceeds for defendant IZA's and Co-Conspirator 1's personal benefit.

20.  From approximately 2020 through 2022, defendant IZA and Co-Conspirator 1 received approximately $37 million associated with the sale of access to the Meta advertisement accounts into the Zort, Dream, and Rise bank accounts from domestic and international payors.

21.  These Introductory Allegations are incorporated into each count of this First Superseding Information.

COUNT ONE

[18 U.S.C. § 241]

A.    OBJECT OF THE CONSPIRACY

22.    Beginning on a date unknown and continuing through in or around June 2022, in Los Angeles County, Orange County, and Riverside County, within the Central District of California, and elsewhere, defendant ADAM IZA, and others known and unknown to the United States Attorney, conspired and agreed with each other to knowingly and intentionally injure, oppress, threaten, and intimidate persons of the State of California, namely, Victim R.C., Victim L.A., Victim E.Z., and Victim D.D., in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

23.    More specifically, defendant IZA and others known and unknown to the United States Attorney would enter into a scheme to intimidate, harass, and threaten individuals with whom defendant IZA had disputes and to obtain property, including by using confidential information and court-authorized search warrants obtained by LASD deputies in their official capacities.

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

24.    The object of the conspiracy was to be accomplished, in substance, as follows:

a.    Defendant IZA would hire active LASD deputies to act as his personal bodyguards, accompanying him 24 hours per day and seven days per week.

b.    Defendant IZA and Co-Conspirator 1 would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers from the Zort and Dream bank accounts.

c.    The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying defendant IZA.

d.    Defendant IZA would inform the LASD deputies about individuals with whom he had personal and/or monetary disputes and obtain the LASD deputies' assistance in gathering information about those individuals; obtaining property from them; and/or retaliating against them.

e.    The LASD deputies would use their powers as sworn law enforcement officers to improperly access sensitive law enforcement databases and other confidential databases to obtain PII about individuals, including addresses, registered vehicles, and criminal backgrounds.

f.    The LASD deputies would use their powers as sworn law enforcement officers to improperly obtain court-authorized search warrants related to individuals with whom defendant IZA had disputes, including warrants to search individuals' residences and to obtain location information associated with those individuals.

g.    Defendant IZA, the LASD deputies, and their associates would use confidential information that the LASD deputies obtained in their official capacities to locate, intimidate, harass, threaten, and extort individuals with whom defendant IZA had disputes and/or their associates.

h.    Defendant IZA, the LASD deputies, and their associates would plan to steal, attempt to steal, and steal property from

7

individuals with whom defendant IZA had disputes and/or their associates.

i.    Defendant IZA, the LASD deputies, and their associates would intimidate, harass, and threaten individuals with whom defendant IZA had disputes and/or their associates, including by threatening violence and by using confidential information that the LASD deputies obtained in their official capacities.

j.    Defendant IZA and the LASD deputies and other associates would conceal their activities by communicating using encrypted communications applications, including Telegram, to avoid law enforcement detection.

C.    OVERT ACTS

25.    On or about the following dates, in furtherance of the conspiracy and to accomplish the object of the conspiracy, defendant IZA and others known and unknown to the United States Attorney, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

***Scheme Involving Victim R.C.***

Overt Act No. 1:    On August 16, 2021, during a meeting between defendant IZA and Victim R.C. at defendant IZA's residence in the Bel Air neighborhood of Los Angeles, defendant IZA, who had multiple firearms in his immediate vicinity, demanded that Victim R.C. refund money to defendant IZA in connection with an event Victim R.C. threw at defendant IZA's residence on or about August 15, 2021.

Overt Act No. 2:    On August 16, 2021, during the meeting at defendant IZA's residence, LASD Deputy 5 and LASD Deputy 6 held Victim R.C. at gunpoint in defendant IZA's presence.

8

Overt Act No. 3:    On August 16, 2021, through the use of R.C.'s phone, defendant IZA caused approximately $25,000 to be transferred from Victim R.C.'s business's bank account to a bank account for Zort.

Overt Act No. 4:    In or around August 2021, defendant IZA began communicating regularly with Victim R.C.'s then-romantic partner, Co-Conspirator 2, who attended the event at defendant IZA's Bel Air residence with Victim R.C. on or about August 15, 2021.

Overt Act No. 5:    On August 17, 2021, defendant IZA caused a text message to be sent to Victim R.C. stating: "Bother [Co-Conspirator 2] again and you will know who I am.  Text or call [Co-Conspirator 2] again and I will show up at your house."

Overt Act No. 6:    In or around August 2021, defendant IZA engaged LASD Deputy 1's company, Security Company 1, to provide security-related services for defendant IZA.

Overt Act No. 7:    Beginning in or around August 2021, defendant IZA directed payments to LASD Deputy 1 and/or Security Company 1 of approximately $100,000 per month through a combination of wire transfers and cash payments from the Zort and Dream bank accounts.

Overt Act No. 8:    In or around August 2021, LASD Deputy 1 began assigning teams of active LASD deputies to accompany defendant IZA 24 hours per day and seven days per week.

Overt Act No. 9:    In or around mid-to-late 2021, defendant IZA separately engaged LASD Deputy 2 to provide security-related services for defendant IZA.

Overt Act No. 10:    Beginning in or around fall 2021, defendant IZA caused tens of thousands of dollars to be transferred from Zort,

Dream, and Co-Conspirator 1 to two businesses associated with LASD Deputy 2.

Overt Act No. 11:  On September 24, 2021, LASD Deputy 1, after conferring with defendant IZA and/or others, contacted a LASD narcotics detective and informed him that a confidential informant had said that Victim R.C. was selling narcotics and storing large quantities of fentanyl and cocaine at Victim R.C.'s residence in Los Angeles, while deliberately concealing that LASD Deputy 1 had a business relationship with defendant IZA and that defendant IZA was paying LASD Deputy 1 and/or Security Company 1 large sums of money.

Overt Act No. 12:  In or around September 2021, defendant IZA, Co-Conspirator 2, and LASD Deputy 2 discussed and agreed to a plan whereby they would cause Victim R.C. to be arrested with illegal drugs by law enforcement officers.

Overt Act No. 13:  In or around late September 2021, at defendant IZA's direction, Co-Conspirator 2 contacted Victim R.C., who was in Florida, and persuaded Victim R.C. to return to Los Angeles.

Overt Act No. 14:  In or around late September 2021, Co-Conspirator 2 paid for a flight for Victim R.C. to travel from Florida to Los Angeles, at defendant IZA's direction.

Overt Act No. 15:  On September 26, 2021, defendant IZA met with Co-Conspirator 2 and gave Co-Conspirator 2 hundreds of dollars for Victim R.C. to use to purchase illegal drugs.

Overt Act No. 16:  On September 27, 2021, Co-Conspirator 2, who was communicating with defendant IZA, picked up Victim R.C. in Los Angeles in a vehicle, purportedly to take Victim R.C. to Co-Conspirator 2's residence.

10

Overt Act No. 17:   On September 27, 2021, Victim R.C. used the money defendant IZA gave Co-Conspirator 2 to purchase illegal drugs.

Overt Act No. 18:   On September 27, 2021, LASD Deputy 4 conducted a traffic stop of the vehicle driven by Co-Conspirator 2, in which Victim R.C. was a passenger, in Paramount, California, after purportedly observing a lane violation.

Overt Act No. 19:   On September 27, 2021, after speaking with Co-Conspirator 2 and Victim R.C., LASD Deputy 4 indicated that Victim R.C. had an outstanding warrant and placed Victim R.C. in the back of a LASD patrol vehicle.

Overt Act No. 20:   On September 27, 2021, LASD Deputy 4 searched Co-Conspirator 2's vehicle and found a plastic bag containing suspected cocaine under the front passenger seat, where Victim R.C. had been seated, and two bags containing psilocybin mushrooms inside Victim R.C.'s backpack.

Overt Act No. 21:   On September 27, 2021, based upon the traffic stop, LASD Deputy 4 caused Victim R.C. to be charged with transportation of a controlled substance and jailed for several days before the charges were dropped for lack of sufficient evidence.

Overt Act No. 22:   On September 27, 2021, defendant IZA communicated with Co-Conspirator 2 before, during, and after the traffic stop and arrest of Victim R.C.

Overt Act No. 23:   On September 27, 2021, defendant IZA and LASD Deputy 2 traveled to Paramount and observed Victim R.C.'s arrest, including from inside defendant IZA's vehicle, and caused photographs and/or videos of the incident to be taken.

Overt Act No. 24:   On October 1, 2021, defendant IZA caused text messages to be sent to Victim R.C. containing a photograph of

Victim R.C.'s booking photograph and stating: "Worthless loser. Congrats on the drug felony arrest."

Overt Act No. 25:   On October 1, 2021, defendant IZA caused text messages to be sent to Victim R.C. that stated, "For a drug dealer, you fucked with the wrong people," along with a photograph of Victim R.C.'s September 27, 2021 arrest in progress.

Overt Act No. 26:   On October 2, 2021, after Victim R.C. complained Co-Conspirator 2 via text about being set up, defendant IZA caused a text message to be sent to Victim R.C. stating: "The cops had you on their watch list for week, so go complain to them [a]bout setting you up.  Hahaha.  Worthless loser."

Overt Act No. 27:   In or around early October 2021, after the LASD narcotics detective whom LASD Deputy 1 contacted obtained a warrant from a Los Angeles County Superior Court Judge to search Victim R.C.'s residence, LASD Deputy 1 received a communication from the LASD narcotics detective that officers did not find any illegal drugs inside Victim R.C.'s residence during the search, which took place on or about October 12, 2021 and during which Victim R.C. was detained in an LASD vehicle.

**Scheme Involving Victim L.A.**

Overt Act No. 28:   On or about October 21, 2021, defendant IZA caused Victim L.A., with whom defendant IZA had a business dispute, to visit defendant's residence in the Bel Air neighborhood of Los Angeles, where several security guards, including LASD Deputy 2, were present.

Overt Act No. 29:   On or about October 21, 2021, while at defendant IZA's residence, defendant IZA held Victim L.A. at gunpoint, asked whether Victim L.A. had scammed defendant IZA, and

threatened to harm Victim L.A. if Victim L.A. failed to pay defendant IZA.

Overt Act No. 30:   On or about October 21, 2021, after defendant IZA held Victim L.A. at gunpoint, Victim L.A. transferred approximately $127,000 to defendant IZA.

***Scheme Involving Victim E.Z. and Victim D.D.***

Overt Act No. 31:   On November 15, 2021, defendant IZA hired Private Investigator 1 to locate and surveil Victim E.Z., with the intent to recover a laptop from Victim E.Z. that defendant IZA believed to contain millions of dollars in cryptocurrency.

Overt Act No. 32:   On November 21, 2021, while defendant IZA and Victim E.Z. were meeting outside a gas station/convenience store in Riverside County, at least one of defendant IZA's bodyguards, who followed Victim E.Z.'s vehicle to the location, approached Victim E.Z. carrying a firearm.

Overt Act No. 33:   On November 21, 2019, defendant IZA's armed bodyguard attempted to restrain Victim E.Z., causing him to run away and call 911.

Overt Act No. 34:   On November 21, 2021, after Victim E.Z. fled, defendant IZA and his bodyguards stole two bags from the trunk of Victim E.Z.'s vehicle and left.

Overt Act No. 35:   Beginning in or around late 2021 and continuing into March 2022, LASD Deputy 1 and LASD Deputy 3 accessed and used sensitive law enforcement databases and confidential databases to which LASD deputies had access to obtain PII for Victim E.Z.; Victim E.Z.'s associate, Victim D.D.; Victim D.D.'s family members; and others.

Overt Act No. 36:    On December 2, 2021, defendant IZA caused text messages to be sent to Victim E.Z. containing photographs of confidential database reports showing Victim E.Z.'s PII, including Victim E.Z.'s home address and vehicles registered to Victim E.Z.

Overt Act No. 37:    On December 15, 2021, defendant IZA and several others, including LASD Deputy 1, traveled to Victim D.D.'s residence in Orange County in search of Victim E.Z. and/or the laptop containing cryptocurrency on it.

Overt Act No. 38:    On December 15, 2021, while outside Victim D.D.'s residence, LASD Deputy 1 identified himself as a law enforcement officer and displayed his badge in hopes of recovering the laptop for defendant IZA.

Overt Act No. 39:    In or around January 2022, defendant IZA and LASD Deputy 1 discussed and agreed that LASD Deputy 1 would attempt to locate Victim E.Z. by obtaining a search warrant related to Victim E.Z.'s telephone number.

Overt Act No. 40:    On January 6, 2022, LASD Deputy 1 applied for and obtained a search warrant under false pretenses from a Los Angeles County Superior Court Judge for GPS location information associated with multiple telephone numbers, including Victim E.Z.'s number.

Overt Act No. 41:    On January 6, 2022, in the sworn affidavit supporting the warrant application, LASD Deputy 1 falsely stated that Victim E.Z.'s telephone number was associated with a suspect in a firearms investigation.

Overt Act No. 42:    In or around January 2022, after securing the warrant for GPS location information associated with Victim

14

E.Z.'s phone, LASD Deputy 1 used the GPS location information to locate Victim E.Z. and a residence where Victim E.Z. was staying.

Overt Act No. 43:   On January 19, 2022, defendant IZA sent a text message to Private Investigator 1 stating, "I found where [Victim E.Z.] staying," and provided Victim E.Z.'s address.

Overt Act No. 44:   On January 19, 2022, defendant IZA told Private Investigator 1 that Victim E.Z. was located by pinging Victim E.Z.'s phone and said: "The ping was done by law enforcement themselves . . . It took a Warrant . . . And had to get signed by judge."

Overt Act No. 45:   On March 12, 2022, Co-Conspirator 3 and Private Investigator 1 met to discuss plans to take a laptop from Victim D.D., whom defendant IZA believed was in possession of the laptop.

Overt Act No. 46:   On March 12, 2022, Co-Conspirator 3 traveled to a location in Orange County where Victim D.D. was visiting, surveilled the location, physically assaulted Victim D.D., and stole a laptop that Victim D.D. had in Victim D.D.'s possession.

Overt Act No. 47:   On March 12, 2022, Co-Conspirator 3 went to defendant IZA's residence in Bel Air and presented the laptop to defendant IZA; defendant IZA later determined that the stolen laptop was not the device believed to contain millions in cryptocurrency.

Overt Act No. 48:   On March 13, 2022, defendant IZA caused a text message to be sent to Victim E.Z. containing photographs of Victim E.Z.'s family members and Victim E.Z.'s car and stating, "Everyone you know."

Overt Act No. 49:   On March 14, 2022, defendant IZA caused threatening messages to be sent to Victim D.D..

15

Overt Act No. 50:   On March 30, 2022, defendant IZA caused three armed individuals to force entry into Victim E.Z.'s residence and use the firearms to force Victim E.Z. into relinquishing a laptop; as the three individuals forced the door open, Victim E.Z. fired a gun in the direction of the three armed individuals, causing them to flee.

Overt Act No. 51:   In or around early June 2022, defendant IZA caused a video to be sent to Victim E.Z. of the attempted home invasion of Victim E.Z.'s residence.

COUNT TWO

[18 U.S.C. § 1343]

A.    THE SCHEME TO DEFRAUD

26.    Beginning in or about December 2020 and continuing through September 2024, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant ADAM IZA, together with others known and unknown to the United States Attorney, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Meta, Atlas Marketing Group ("AGM"), and other major Meta advertising clients of money and property through the use of materially false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

B.    MEANS AND METHODS OF THE SCHEME TO DEFRAUD

27.    The scheme to defraud operated in the following manner:

a.    Defendant IZA would fraudulently gain access to Meta business manager accounts and their associated lines of credit.  In doing so, defendant IZA fraudulently posed as legitimate Meta clients, accessed Meta client business manager accounts, and converted available lines of credit to his own use.

b.    Defendant IZA would sell access to compromised business manager accounts and lines of credit to various advertising companies.  Defendant IZA would receive payments from these advertising companies via wire transfers into Zort, Dream, and Rise bank accounts as well as via cryptocurrency transfers.

c.    Meta clients would be billed for advertising expenditures they did not incur.  Where Meta and/or Meta clients were unaware of the improper billing, the Meta client would pay the invoice and incur a financial loss.  Where Meta or Meta clients

17

discovered the improper billing, Meta made its clients whole, thereby transferring the loss to Meta.

d.    As an example, within the period January 22 through February 19, 2022, defendant IZA fraudulently accessed a business manager account owned by Victim A, allocated portions of Victim A's line of credit to four different business manager accounts, and sold access to those business manager accounts and lines of credit to his own clients.  Defendant IZA's clients thereafter engaged in advertising spending, backed by Victim A's line of credit, which Meta then billed to Victim A through the following invoices:

| Account | Invoiced Amount |
| --- | --- |
| XXXX9224 | $13,620 |
| XXXX1908 | $ 6,279 |
| XXXX3506 | $45,174 |
| XXXX0869 | $41,762 |

C.    USE OF WIRES

28.  On or about March 9, 2022, within the Central District of California, and elsewhere, defendant IZA, for the purpose of executing the above-described scheme to defraud, transmitted and caused the transmission of, by means of a wire communication in interstate commerce, a wire transfer in the amount of $37,540 from one of defendant IZA's clients into Dream's Chase Bank account.

COUNT THREE

[26 U.S.C. § 7201]

Between in or about January 2021 and through on or about April 18, 2022, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendant ADAM IZA willfully and affirmatively attempted to evade and defeat the assessment of approximately $6,772,725 in federal income taxes due and owing to the United States of America, for the calendar year 2021, by committing the following affirmative acts, among others:

a.   In or around February 2021, defendant IZA caused Co-Conspirator 1 to incorporate Dream, act as its sole director and officer, and open bank accounts to act as a shell corporation through which income from the fraudulent schemes could be directed.

b.   On or about April 18, 2022, defendant IZA failed to file a Form 1040 for the calendar year 2021, to conceal and avoid reporting to the IRS the gross income defendant IZA obtained from Zort and Dream.

c.   On or about April 18, 2022, defendant IZA failed to file a Form 1120 for the calendar year 2021, to conceal and avoid reporting to the IRS the gross income Zort obtained from the fraudulent schemes.  Defendant IZA concealed and attempted to conceal, and caused Co-Conspirator 1 to conceal and attempt to conceal, defendant IZA's interest in Zort and Dream, including in corporate filings, financial documents, civil litigation, and communications with payors,  and tax preparers.

d.   Defendant IZA sent approximately $11,115,975 from Zort's BOA and Chase bank accounts to a Singapore-based investment firm for the purchase of cryptocurrency, to conceal and avoid reporting to the

19

IRS gross income received by Zort.

e.    Defendant IZA used Zort and Dream corporate bank accounts, and caused Co-Conspirator 1 to engage in transactions involving Zort and Dream corporate bank accounts, including direct payments, cashier's checks, cash withdrawals, and credit card payments, to expend funds obtained through the fraudulent schemes to acquire personal items for the benefit of defendant IZA and Co-Conspirator 1, including, but not limited to, the following:

i.    Defendant IZA made lease payments of $78,579 per month on a 2019 Ferrari 488 Pista and $21,943 per month on a 2019 Lamborghini Aventador SVJ using funds from Zort's BOA bank account.

ii.    On or about March 15, 2021, defendant IZA leased a third car, a 2021 Lamborghini Aventador SVJ Roadster, in Zort's name, using funds from Zort and Dream bank accounts.  Defendant IZA and Co-Conspirator 1 spent $204,072 on the downpayment and $53,792 on monthly payments.

iii. On or about June 30, 2021, defendant IZA leased a residential property in Bel Air with a monthly rent of $200,000. Defendant IZA spent a total of approximately $1,640,007 from Zort's business accounts to pay for the security deposit and rent for this residential property.

iv.    Defendant IZA and Co-Conspirator 1 spent approximately $280,000 for rent on a residential property in the Newport Coast neighborhood, using funds from Zort and Dream bank accounts.

v.    Defendant IZA and Co-Conspirator 1 withdrew approximately $770,000 in cash from Zort and Dream bank accounts, including $263,000 from Zort's BOA account, $120,000 from Zort's Chase account, and $387,000 from Dream's BOA account.

vi.  Defendant IZA and Co-Conspirator 1 purchased approximately $667,255 in luxury goods using funds from Zort and Dream bank accounts.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this First Superseding Information.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

22

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(2), in the event of any defendant's conviction of the offense set forth in Count Two of this First Superseding Information.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

23

FORFEITURE ALLEGATION THREE

[26 U.S.C. § 7301 and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 26, United States Code, 7301, and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Three of this First Superseding Information.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

a. Any property sold or removed by the defendant in fraud of the internal revenue laws, or with design to avoid payment of such tax, or which was removed, deposited, or concealed, with intent to defraud the United States of such tax or any part thereof;

b. All property manufactured into property of a kind subject to tax for the purpose of selling such taxable property in fraud of the internal revenue laws, or with design to evade the payment of such tax;

c. All property whatsoever, in the place or building, or any yard or enclosure, where the property described in subsection (a) or (b) is found, or which is intended to be used in the making of property described in subsection (a), with intent to defraud the United States of tax or any part thereof, on the property described in subsection (a);

d. All property used as a container for, or which shall have contained, property described in subsection (a) or (b);

e. Any property (including aircraft, vehicles, vessels, or draft animals) used to transport or for the deposit or concealment

24

of property described in subsection (a) or (b), or any property used to transport or for the deposit or concealment of property which is intended to be used in the making or packaging of property described in subsection (a); and

f. To the extent that such property is not available for forfeiture, a sum of money equal to the total value of the property described in this paragraph.

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

///

///

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney

*Lindsey Greer Dotson*

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

CASSIE D. PALMER
Assistant United States Attorney
Chief, Public Corruption and
Civil Rights Section

DANIEL J. O'BRIEN
Assistant United States Attorney
Senior Litigation Counsel
Public Corruption and
Civil Rights Section

J. JAMARI BUXTON
Assistant United States Attorney
Public Corruption and
Civil Rights Section

MAXWELL COLL
Assistant United States Attorney
Cyber and Intellectual Property
Crimes Section